IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 96-21118

---

DAVID R. RUIZ; ET AL.,

                                    Plaintiffs-Appellees,

UNITED STATES OF AMERICA,

                                    Intervenor-Plaintiff-Appellee,

    versus

WAYNE SCOTT, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL
DIVISION; ALLEN B. POLUNSKY; ELLEN J. HALBERT;
CAROLE S. YOUNG; JOSHUA W. ALLEN; R.H. DUNCAN;
JOHN R. WARD; JOHN DAVID FRANZ; NANCY PATTON;
CAROL S. VANCE,

                                    Defendants-Appellants.

\* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \* \*

---

consolidated with
No. 97-20068

---

IN RE:  WAYNE SCOTT, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION;
ALLEN B. POLUNSKY; ELLEN J. HALBERT; CAROLE S.
YOUNG; JOSHUA W. ALLEN; R.H. DUNCAN; JOHN R. WARD;
JOHN DAVID FRANZ; NANCY PATTON; CAROL S. VANCE,

                                    Petitioners.

---

Appeal from the United States District Court for the
Southern District of Texas

(H-78-CV-787)

_____

August 6, 1997

_____

On Petition for Writ of Mandamus to the United States District
Court for the Southern District of Texas
(H-78-CV-787)

_____

Before GARWOOD, BENAVIDES and STEWART, Circuit Judges.[*]

PER CURIAM:

We are now presented with yet another episode in the long-pending Texas prison class action litigation, which began some twenty-five years ago.

## Procedural History

Following a trial that began in October 1978 and ended in September 1979, the district court in December 1980 issued a lengthy memorandum opinion finding conditions of confinement in the Texas prison system to be in violation of the United States Constitution. Subsequently, in May 1981 the district court issued a declaratory judgment and injunction on issues not disposed of by a consent decree that had been entered in the interim, and appointed a special master to monitor implementation of relief. We generally affirmed the findings of constitutional violations but

_____

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

narrowed the scope of the relief ordered. *See Ruiz v. Estelle*, 503 F.Supp. 1265 (S.D. Tex. 1980), *rev'd in part, Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *modified in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 1438 (1983). In July 1985, the district court approved a modification of the decree reflected in a "Crowding Stipulation" entered into between the parties, which was "a comprehensive management scheme that seeks to reduce the crowded conditions of all Texas penitentiaries." *Ruiz v. Lynaugh*, 811 F.2d 856, 857 (5th Cir. 1987). In September 1986, the defendants moved the district court to modify the Crowding Stipulation to allow some increase of the prison system allowable capacity without new construction; in October 1986, the district court denied this request and precluded consideration of certain beds in calculating capacity; the defendants appealed, and in February 1987 we affirmed. *Ruiz v. Lynaugh, supra.*

In March 1990, the district court ordered the parties to begin negotiations to bring about a comprehensive final order in the case, including timetables for termination of the court's jurisdiction. In January 1991, defendants moved to terminate all existing orders, and in March 1992 defendants filed a comprehensive memorandum supporting their motion, plaintiffs filed an opposition thereto, and the parties engaged in discovery. In July 1992, the United States, which had intervened as a plaintiff in 1974, filed a memorandum in support of defendants' motion, urging the court "to

3

dissolve all injunctive orders in this case and terminate jurisdiction," asserting that in the past decade there had been "dramatic improvements of conditions throughout" the prison system, that "there can be no serious claim that Texas is not currently in compliance with the Constitution," and that defendants "have substantially complied with the court's orders in this case." Also in July 1992, the class plaintiffs and the defendants agreed on a proposed final judgment, which they jointly submitted to the court in August 1992. In this proposed judgment, the defendants withdrew their earlier motion to terminate the court's jurisdiction. Pursuant to order of the court, the class members were given notice. On October 26, 1992, the United States notified the court that it did not object to the proposed final judgment. Later that month, an evidentiary hearing was held on the proposed final judgment.

On December 11, 1992, the district court entered a lengthy memorandum opinion, making extensive findings and approving the proposed final judgment. A separate order approving the judgment was entered the same day.

As subsequently characterized by the district court (in its May 31, 1996, order), the December 11, 1992, final judgment "vacated and replaced numerous detailed orders and compliance plans. It resulted in complete relief from judgment and termination of the court's jurisdiction in nine substantive areas and continuing permanent injunctive orders on eight substantive

4

issues." Neither the December 11, 1992, memorandum opinion nor the final judgment of the same date make any express finding of present or ongoing constitutional violations, and the injunctive relief granted thereby imposes at least certain requirements or restrictions that are not constitutionally mandated (e.g., the December 11, 1992, memorandum recognizes that the provision of the final judgment of the same date requiring defendants "to maintain a contact visiting program in perpetuity" is not constitutionally required, citing *Block v. Rutherford*, 104 S.Ct. 3227 (1984). While neither the December 1992 memorandum nor the final judgment expressly finds that there were *no* extant or ongoing constitutional violations, the memorandum quotes and apparently credits[1] testimony of state officials suggestive of constitutional compliance, and it also states that:

> "TDCJ-ID has remade itself into a professionally operated agency whose goals are to achieve the highest standards of correctional excellence.
>
> Equally important, the measures taken by TDCJ-ID officials to meet their constitutional obligations have been memorialized and institutionalized in numerous internal rules and regulations that have replaced this court's orders as the agency's 'road map' to success. The court is satisfied that the defendants not only will maintain and implement these rules and regulations, but also will continue to strive to improve on them and their implementation despite the absence in many areas of detailed court orders.

---

[1]In a footnote to the memorandum the court indicates that its references to evidence "indicate . . . that the court finds the evidence credible and is using it as a source for the substantive findings."

5

The parties have caused remarkable and palpable changes to occur within TDCJ-ID, and for that the court is grateful."

The memorandum likewise observes that the record before the court permitted it "to be fully informed on all relevant matters as it evaluates the proposed final judgment."[2] Finally, as the memorandum notes, the final judgment provides for class counsel and the Special Master to be relieved of their duties June 1, 1993, and "[u]ntil that date, the Special Master will continue to assist the parties in resolving compliance issues."

On March 25, 1996, defendants filed a motion to vacate the December 11, 1992, final judgment "pursuant to Fed. R. Civ. P. 60(b)(5)." The motion alleges in relevant part:

"The Defendants currently operate a constitutional prison system and the State has taken substantial steps to ensure its continuing commitment to such an operation, moving beyond the bare requirements with strong legislation to provide for future compliance with the Constitution in the various aspects of prison management.

The state acknowledges that no practical effect would be felt by the vacating of the Final Judgment: Texas prisons would operate without the Final Judgment as they operate today. This motion is not predicated upon the state's present desire or intent to alter any aspect of prison administration. Indeed, we can fathom no prison policy or practice which the state would desire to employ which is in any way impeded by the Final Judgment."

. . . .

Defendants' compliance with the Final Judgment, the

---

[2]However, the record before us does not include that of any hearing or hearings leading to the December 11, 1992, memorandum and final judgment.

6

public's interest and the State of Texas' desire to exercise autonomy over its institutions, mandate that any remaining vestiges of court involvement—however passive—with the prison system, now be vacated. In the face of the commitment of the defendants, the State and its agencies, and the legislature to continuing a constitutional prison system, the defendants submit that the time to vacate the final judgment is now at hand."

On April 26, 1996, the Prison Litigation Reform Act (PLRA) was signed into law by President Clinton, and its relevant provisions are now codified as 18 U.S.C. § 3626. Pub. L. 104-134, Title VIII, Sec. 802(a), 110 Stat. 1321-66.[3] Some of the relevant provisions of this legislation are noted below.

On May 31, 1996, the district court entered an order respecting the defendants' March 25 motion.[4] This order states that the December 1992 final judgment "resulted in complete relief

---

[3]Section 802(b) of Pub. L. 104-134 provides:

"(b) APPLICATION OF AMENDMENT.—
    (1) IN GENERAL.—Section 3626 of title 18, United States Code, as amended by this section, shall apply with respect to all prospective relief whether such relief was originally granted or approved before, on, or after the date of the enactment of this title.
    (2) TECHNICAL AMENDMENT.—Subsections (b) and (d) of section 20409 of the Violent Crime Control and Law Enforcement Act of 1994 are repealed."

[4]On May 21, 1996, Texas State Representative Culberson and Texas State Senator Brown (who have moved to intervene in the present proceedings in this Court)filed a motion to intervene as defendants in the district court and a proposed motion to vacate the December 1992 final judgment pursuant to the PLRA. On June 20, 1996, plaintiffs and defendants filed separate oppositions to the Culberson and Brown motion to intervene. On July 5, 1996, Culberson and Brown filed a reply brief in support of their motion to intervene. So far as the record discloses, the motion to intervene has not been ruled on by the district court.

7

from judgment and termination of the court's jurisdiction in nine substantive areas and continuing permanent injunctive orders on eight substantive issues," and (somewhat mysteriously) that the defendants' motion "puts in issue not only the eight substantive areas as to which the Final Judgment entered permanent injunctions but also the constitutionality of the entire operation of the Texas prison system." The order goes on to appoint as attorney for the plaintiff class the same attorney who had been representing the class in connection with defendants' January 1991 motion and thereafter and until June 1993, and it orders that plaintiffs' counsel and defendants' counsel

> "shall meet and confer within forty-five days from the entry of this order and attempt to (1) narrow the issues in dispute, (2) establish a joint discovery plan, (3) discuss what role, if any, the Special Master in this cause could play in the efficient development of a factual record, and (4) propose to the court an agreed-upon schedule for a hearing on defendants' motion. Within sixty days of the entry of this order the parties shall report to the court on the results of this meeting."

On June 20, 1996, plaintiffs filed their opposition to defendants' March 25, 1996, motion to vacate. This opposition primarily asserts that the allegations in defendants' motion to not entitle them to any relief—i.e., even if the prison system is and has been since the December 1992 final judgment operated in all respects constitutionally and in accordance with that judgment, defendants are not entitled to have the judgment vacated or modified, largely because such compliance was contemplated by the

8

agreed judgment. The opposition then goes on to assert "Plaintiffs deny defendants' factual assertions that current conditions meet constitutional requirements in all respects and will put defendants to their proof on their allegations." However, the opposition fails to allege any specific asserted violation or even general type or character of violation, either current or existing at any time on or after (or within a year before) December 1992; nor does it allege in any fashion that any sort of constitutional violations, current or extant at or after (or within a year before) December 1992, are (or were) widespread or systemic; nor does it allege any current or past violation of the December 1992 final judgment.

On August 8, 1996, defendants filed a report as called for by the court's May 31 order. The report advised that plaintiffs' counsel and the Department of Justice had toured one prison unit, that tours of additional units, including tours by medical experts, were to be made in the near future, that defendants had produced documents to plaintiffs' counsel, who had not yet completed review of them, that the parties would notify the court as soon as an agreement was reached on what issues were in dispute and on a discovery plan, and that "[o]nce the parties determine what additional discovery is necessary, they will report to the district court on an agreed hearing date."

The next relevant filing contained in the record before us occurred on September 6, 1996, when defendants filed their

Supplemental Motion To Vacate Final Judgment. This motion commences as follows:

> "Defendants, by and through Attorney General Dan Morales, file their supplemental motion to vacate the final judgment. Defendants have previously moved this court to vacate the final judgment in this matter pursuant to Fed. R. Civ. P. 60(b)(5). Defendants now move, in the alternative, to vacate the final judgment pursuant to 18 U.S.C. § 3626(b)(2), as amended by the Prison Litigation Reform Act, Title VIII of P.L. 104-134, signed into law by President Clinton on April 26, 1996."

The motion asserts that because the December 1992 final judgment does not contain the findings specified in section 3626(b)(2), it should be immediately terminated.[5]

---

[5]Section 3626(b) provides:

> "**(b) Termination of relief—**
> **(1) Termination of prospective relief.—(A)** In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener—
> (i) 2 years after the date the court granted or approved the prospective relief;
> (ii) 1 year after the date the court has entered an order denying termination of prospective relief under this paragraph; or
> (iii) in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.
> **(B)** Nothing in this section shall prevent the parties from agreeing to terminate or modify relief before the relief is terminated under subparagraph (A).
> **(2) Immediate termination of prospective relief.—**In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the

10

On September 23, 1996, plaintiffs filed their opposition to

Federal right.
    **(3) Limitation.**—Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current or ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.
    **(4) Termination or modification of relief.**—Nothing in this section shall prevent any party or intervener from seeking modification or termination before the relief is terminable under paragraph (1) or (2), to the extent that modification or termination would otherwise be legally permissible."

Section 3626(g)(1), (6), (7) and (9) provide, respectively:

    "(1) the term 'consent decree' means any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements;

    (2) . . .;

    (3) . . .;

    (4) . . .;

    (5) . . .;

    (6) the term 'private settlement agreement' means an agreement entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled;

    (7) the term 'prospective relief' means all relief other than compensatory monetary damages;

    (8) . . .;

    (9) the term 'relief' means all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlement agreements."

11

defendants' September 6, 1996, motion.  This pleading asserts that "the PLRA should not be applied retroactively to invalidate the Final Judgment, entered before the PLRA became law," that "in substance and effect" the December 1992 memorandum and judgment made the findings required by the PLRA, that an evidentiary showing and factual findings were required to resolve both defendants' March 25, 1996, motion and their September 6, 1996, motion, that defendants waived or were estopped to invoke the "automatic stay" provisions of the PLRA, 3626(e)(2),[6] that such stay provisions are inapplicable or, if applicable, are unconstitutional, and that the PLRA is unconstitutional if it invalidates or terminates the December 1992 final judgment.  Plaintiffs' opposition does not assert, either generally or in any particular, that the prison conditions or operations are now, or have ever been since December

---

[6]Section 3626(e) provides,

"**(e) Procedure for motions affecting prospective relief.—**
**(1) Generally.**—The court shall promptly rule on any motion to modify or terminate prospective relief in a civil action with respect to prison conditions.
**(2) Automatic stay.**—Any prospective relief subject to a pending motion shall be automatically stayed during the period—
(A)(i) beginning on the 30th day after such motion is filed, in the case of a motion made under paragraph (1) or (2) of subsection (b); or
(ii) beginning on the 180th day after such motion is filed, in the case of a motion made under any other law; and
(B) ending on the date the court enters a final order ruling on the motion."

12

1992 (or since December 1991), unconstitutional or in violation of the December 1992 final judgment.

Also on September 23, 1996, the district court signed an order, entered September 25, 1996, providing as follows:

> "The Court has reviewed defendants' Supplemental Motion to Vacate Final Judgment, filed September 6, 1996, under the Prison Litigation Reform Act ('PLRA'), and plaintiffs' response thereto. The Court also takes note of defendants' Motion to Vacate Final Judgment filed March 25, 1996, pursuant to Fed. R. Civ. P. 60(b), and the parties' Report to the Court filed August 8, 1996, contemplating the development of a factual record and an evidentiary hearing.

> It is impossible for the Court to resolve defendants' motions within the 30-day period specified in 18 U.S.C. sec. 3626(e)(2)(A)(i), or the 180-day period in subsection (A)(ii). The Court believes that the status quo should be preserved pending the resolution of defendants' motions, and finds that the PLRA 'automatic stay' provisions violate the Separation of Powers and due process of law, substantially for the reasons discussed in Hadix v. Johnson, No. 80-CV-73581, 1996 U.S. Dist. LEWIS 9864 (E.D. Mich. July 5, 1996), and Gavin v. Ray, No. 4-78-CV-70062 (S.D. Iowa, Sept. 18, 1996).

> Accordingly, the Court will proceed to give due consideration to both of defendants' motions when the parties are ready for a hearing on them. In the meantime, the Final Judgment remains in full force and effect."[7]

---

[7]On September 25, 1996, the United States filed its response to defendants' September 6, 1996, supplemental motion to vacate (so far are we can ascertain the United States never responded to defendants' March 25, 1996, motion under Rule 60(b)). This response commenced by stating:

> "The United States was not a party to the Final Judgment entered by this Court in 1992. Consequently, the United States takes no position on whether this Court should vacate the Final Judgment. The United States does have some continued concern over issues of medical and mental health care in the Texas prison system, based on

On October 24, 1996, defendants filed a notice of appeal from the district court's September 23, 1996, order. That appeal was docketed as our No. 96-21118.[8] On the same day, defendants filed in the district court a motion to stay the district court's September 23 order pending the appeal of that order. This motion asserts that by the September 23 order

> "the Court denied the relief mandated by the PLRA, i.e. the immediate termination of judgment in the absence of language in that judgment indicating that 'the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation

---

numerous complaints we have received in the last few years. The United States has not yet had an opportunity to substantiate these complaints and is in discussions with the State of Texas to gain access to the facilities accordingly. Nevertheless, given the longstanding nature of this litigation, the United States intends to pursue those concerns separately pursuant to its authority under the Civil Rights for Institutionalized Persons Act ('CRIPA'), 42 U.S.C. § 1997 et seq., and, if necessary, issue a new notice of investigation specifically tailored to investigate those medical and mental health issues."

The pleading goes on to assert that section 3626(e)(2) is constitutional, *provided* it is construed, as it accordingly should be, not to be "self-executing" or to operate to "preclude a court's deliberative process."

[8]On November 25, 1996, the United States also filed a notice of appeal from the district court's order dated September 23, 1996. On December 23, 1996, the United States moved to dismiss its said appeal; this motion was unopposed, and this Court dismissed the appeal of the United States on December 23, 1996. In its brief in this Court, the United States labels itself as only an appellee (and a respondent to defendants' petition for mandamus), and in its brief requests as relief only that the district court's September 23, 1996, "judgment . . . refusing to give effect to the automatic stay provision pending decision on the State's motion for immediate termination be affirmed" and that the defendants' petition for writ of mandamus be denied.

14

of the Federal right.'  18 U.S.C. § 3626(b)(2)."
The motion also argues that defendants are likely to prevail on appeal on their claim that the district court's failure to immediately terminate the December 1992 judgment is contrary to section 3626(b)(2).  Further, the motion contends that the failure to grant a stay will deprive defendants of an intended benefit of the PLRA, namely "immediate termination of the judgment without the delay and expense associated with discovery and a hearing."  This is the only harm which it is alleged that defendants will suffer if a stay is denied.  The motion continues by asserting:  "The Act provides for immediate termination of the judgment.  Based upon the record currently before the Court, Defendants are entitled to have the Final Judgment vacated."

On November 14, 1996, the district court signed an order denying defendants' motion for stay pending appeal.  The court observed that defendants had not shown likely error in the court's conclusion that section 3626(e)(2) was unconstitutional, and rejected defendants' claim that they would be unduly "injured by the delay and expense of discovery and a hearing on their motion to vacate final judgment," specifically noting that in their March 25 motion defendants asserted "'no practical effect would be felt by vacating the Final Judgment'" and that they "'can fathom no prison policy or practice which the state would desire to employ which is in any way impeded by the Final Judgment.'"  No notice of appeal has been filed from this November 14 order.

15

Defendants thereafter filed in this Court a motion to stay discovery (in the district court) pending resolution of their appeal (our cause No. 96-21118) of the district court's September 23, 1996, order.  On December 31, 1996, a motions panel of this Court denied the motion for stay, noting that it was doubtful the September 23 order was appealable.  The order of this Court was "without prejudice to such rights, if any, as said appellants may have to seek mandamus relief."  On approximately January 24, 1997, defendants filed their petition for writ of mandamus herein, which was assigned our cause No. 97-20068.  On February 3, 1997, a motions panel of this Court ordered that the mandamus (No. 97-20068) be consolidated with the appeal (No. 96-21118).  The consolidated cases were orally argued before the instant panel on June 3, 1997.

In the meantime, on February 24, 1997, Texas State Representative John Culberson and Texas Senator J.E. Brown (see note 4, *supra*) filed in this Court, in our cause No. 96-21118, their motion for leave to intervene as "defendants" in the proceedings before this Court, and their motion "for leave to file motion to terminate federal jurisdiction over the Texas prison system."  Plaintiffs, the United States, and the defendants have each filed their oppositions to these motions.

## Discussion

We conclude that the September 23, 1996, order of the district

16

court is not an appealable order, under either 28 U.S.C. § 1291 or 28 U.S.C. § 1292(a)(1). Plainly, the order of September 23, 1996, does not dispose of the entire case, and hence does not meet the normal requirements of section 1291.

Nor is that order one "refusing to dissolve or modify injunctions" within section 1292(a)(1). The district court's September 23 order does not deny either of defendants' motions to terminate, but rather expressly states "the Court will proceed to give due consideration to both of defendants' motions [the Rule 60(b) motion filed March 25, 1996, and the "supplemental motion" filed September 6, 1996] when the parties are ready for a hearing on them." We note that the September 6 motion was expressly made "in the alternative" to the March 25 motion, which was never withdrawn and was still pending before the court.[9] In its May 31, 1996, order respecting the March 25, 1996, motion, the court had expressly directed the parties to propose an agreed schedule for a hearing. On August 8, 1996, defendants had reported to the court that "they will report to the district court on an agreed hearing date." Defendants have never requested a hearing date. They have not sought a ruling, as such, on either of their motions, they have

_____

[9]By letter dated July 8, 1997, over a month after this case was orally argued and taken under submission by this panel, defendants advised this Court that on July 3, 1997, they had filed (or mailed for filing) in the district court a notice that they were thereby "withdrawing without prejudice" their March 25, 1996, motion under Rule 60(b). But that July 1997 action is not effective to change the character of the district court's 1996 orders.

17

simply asked that the court *grant* their September 6 motion to terminate. Moreover, defendants do not claim that they face any emergency; none of the representations in their March 25, 1996 motion that there was nothing they wanted to do, or even contemplated doing, which would or might be prevented by the December 1992 final judgment have been in any way, expressly or impliedly, retracted. In these circumstances, the fact that the district court's September 23, 1996, order did not immediately grant defendants' September 6, 1996, motion, but rather merely deferred ruling on it, does not constitute that order as one "refusing to dissolve or modify" the December 1992 final judgment (which we treat as an injunction for these purposes). *See Overton v. City of Austin*, 748 F.2d 941, 949-952 (5th Cir. 1984). Of course, should the district court deny, in whole or in part, defendants' motion to terminate, the defendants may then appeal under section 1292(a)(1).

Defendants assert jurisdiction under the collateral order doctrine allowing immediate section 1291 appeal of orders denying defenses based on qualified (or absolute) immunity or Eleventh Amendment immunity, and cite our decision in *Helton v. Clements*, 787 F.2d 1016 (5th Cir. 1986). However, this is not an immunity case of any kind. The Supreme Court has refused to broadly read the collateral order exception to the final judgment rule; and to come within that exception it is not sufficient that appellants'

18

position, if sustained, would obviate the necessity for trial or discovery. *See, e.g., Swint v. Chambers County Commission*, 115 S.Ct. 1203, 1208 (1995); *Digital Equipment Corp. v. Desktop Direct, Inc*., 114 S.Ct. 1992, 1998-2000 (1994). And, defendants' claim here—namely, that section 3626(b)(2) entitles them to termination of the December 1992 final judgment—is not really "conceptually distinct" from the underlying merits, but rather essentially constitutes the merits. *Cf. Helton* at 1017 ("the claim of immunity . . . is conceptually distinct from the merits of the plaintiff's claim that her rights have been violated,'" quoting *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2816 (1985)). We also note that defendants have not filed a motion for summary judgment and have not asked for a setting of either of their motions or for the court to rule thereon one way or the other, but have simply asked for the court to *grant* their supplemental motion. All the court has done is to defer ruling on defendants' two motions, and the only thing before it is their two motions (now, apparently, their one motion; see note 9, *supra*). We reject defendants' attempt to invoke the collateral order doctrine on the basis of an analogy to the immunity cases.

The United States takes the position that the district court's September 23, 1996, order is appealable under the collateral order doctrine because it is a final ruling, separate from the merits, that the stay provisions of section 3626(e)(2) (see note 6, *supra*)

19

are unconstitutional.  We reject this position, without ruling on its facial merits, but because it misconceives the nature of defendants' appeal.  The district court's September 23, 1996, order did two things:    (1) it declared section 3626(e)(2) unconstitutional; (2) it declined to immediately rule, one way or the other, on either of defendants' motions (the March 26, 1996, Rule 60(b) motion and the September 6, 1996, supplemental motion based on section 3626(b)(2)), stating "the Court will proceed to give due consideration to both of defendants' motions when the parties are ready for a hearing on them."  It is this latter portion of the district court's order which the defendants attack on appeal.  Defendants never requested the district court to stay its December 1992 final judgment pending a ruling on either of their two motions to vacate the December 1992 final judgment.  Although *after* they gave their notice of appeal herein from the September 23, 1996, order, the defendants did request the district court to stay *that* 1996 order, they did not even then request a stay of the December 1992 final judgment, and they have not appealed the district court's denial of that stay; moreover, their complaint was that they would have to undergo burdensome discovery and an evidentiary trial, a matter which would *not* be obviated had the district court stayed its December 1992 judgment pending resolution of defendants' motions to vacate.  Similarly, in this Court defendants sought a stay of *discovery* pending their appeal of

20

the September 23, 1996, order.  Finally, defendants' briefing and argument in this Court assert that they were entitled, under section 3626(b)(2), to have their supplemental motion to vacate granted with resultant immediate termination of the December 1992 judgment, not that they were entitled to a stay of the December 1992 judgment until the district court ruled on their motion or motions to vacate.[10]  And, defendants' brief in this Court concludes by stating:

> "The constitutionality of the automatic stay is not relevant to the situation presented by this case.  The record clearly evidences no ongoing current constitutional violation and, therefore, the district court had no need to go further.  The court was obliged to terminate the Final Judgment.

### CONCLUSION

> Defendants pray that this Court reverse the Order of the district court and render judgment terminating the Final Judgment in this litigation."[11]

The defendants' appeal of the district court's September 23, 1996, order seeks to review *not* the failure to stay the December 1992 final judgment pending ruling on the defendants' motion or motions to vacate that 1992 judgment, but rather the court's

---

[10]We note that section 3626(e)(2)(B) plainly contemplates that a motion to vacate or terminate may be acted on—i.e. granted or denied—*after* the stay called for by section 3626(e)(2)(A) has commenced, and that the stay *terminates* when the court rules one way or the other on the motion to vacate or terminate.

[11]Likewise, in their petition for writ of mandamus, defendants state:  "The constitutionality of the automatic stay is not relevant to the situation presented by this case."

21

failure to immediately grant defendants' September 6, 1992, motion by permanently terminating the December 1992 judgment. However, the district court has not denied defendants' motion to vacate or indicated that it will not rule upon same when the parties are ready for a hearing. Under the present circumstances, that aspect of the September 23, 1996, order challenged on appeal is not an appealable order.

The appeal in No. 96-21118 is dismissed for want of an appealable order.

We turn now to the mandamus. As with the appeal, the mandamus does not seek to require the district court to stay (or recognize that section 3626(e)(2) stays) the December 1992 judgment pending its ruling on the motion or motions to vacate, but rather seeks to require the district court to grant the September 6 motion to vacate and permanently terminate the prospective relief ordered by the December 1992 judgment under section 3626(b)(2).[12] The mandamus also requests that we stay all discovery and hearings in the district court pending our resolution of defendants' appeal.[13]

---

[12]See note 11, *supra*.

[13]The petition for mandamus describes the relief sought thereby and the issue presented as follows:

**A. THE RELIEF SOUGHT**

Petitioners request this Court to enter an order requiring the district court to:

1. vacate its Order of September 25, 1996 and immediately terminate the prospective relief of the Final

We decline to issue a writ of mandamus at this time.

Defendants' claims for mandamus relief are entirely grounded on the proposition that by virtue of the provisions of section 3626(b)(2) they are "entitled to the immediate termination of any prospective relief" provided by the December 1992 judgment because that "relief was approved or granted in the absence of a finding by the court," in either the December 1992 judgment itself or the December 1992 memorandum approving it, "that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. As to at least some of the prospective relief ordered by the December 1992 judgment, it appears clear that the standards of section 3626(b)(2) are not met so that if section 3626(b)(2) stood alone it would purport to entitle defendants to immediate termination of at least some of the prospective relief ordered by the December 1992

---

Judgment in light of the fact that it is not accompanied by the requisite finding of § 3626(b)(2); or, alternatively, to

2. vacate the district court's Order of November 20, 1996 and stay all discovery and hearings pending resolution of the Petitioners' appeal.

**B.  ISSUES PRESENTED**

Whether the district court has any discretion to refuse the mandatory duty under the PLRA, to immediately terminate a continuing decree in a prison reform lawsuit, and instead implement discovery and hold an evidentiary hearing."

23

judgment; indeed, it is arguable that this is true as to all the prospective relief granted in the December 1992 judgment. However, as the plaintiffs and the United States point out, section 3626(b)(2) does not stand alone; rather, it is immediately followed by section 3626(b)(3), which provides:

> "(3) **Limitation.**—Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current or ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."

Defendants do not seriously contend that, if the district court appropriately makes, on a proper basis, all the findings referenced in section 3626(b)(3), that termination—even though otherwise called for by section 3626(b)(2)—is nevertheless required. Rather, defendants' contention is that to come within the section 3626(b)(3) "limitation," the findings called for by section 3626(b)(3) must be entirely "based on the record" *as it existed when* the order granting prospective relief was entered—here, December 1992—or, at most, also as it existed when the motion to vacate or terminate under section 3626(b)(2) was filed. We note, initially, that we do not have before us any such record. We do not have the record of the evidentiary hearing in October 1992 that led to the December 1992 judgment. Moreover, the docket entries from January 1993 through August 1996 occupy a stack almost half-an-inch thick of letter-size pages in the record, and

24

the record before us includes only the tiniest fraction of the documents thus listed (we realize many—perhaps all—of these documents *may* well be immaterial). Defendants do not explain how we can direct the district court to terminate the prospective relief of the December 1992 judgment even if we were to accept defendants' interpretation of "based on the record" as used in section 3626(b)(3). Moreover, it is by no means clear that defendants' interpretation of section 3626(b)(3)'s "based on the record" is correct. A strong argument to the contrary can be made, namely: that section 3626(b)(3) contemplates that the findings referenced therein could be made in respect to prospective relief ordered several years previously—as in this case—and that the court could find that such relief "*remains*" necessary to correct "a *current* or *ongoing*" violation, all of which indicates that *present* conditions (respecting the particular subject matter as to which prospective relief was previously ordered) are what is ultimately determinative for purposes of section 3626(b)(3); and if present conditions are determinative, then that suggests that the court in determining whether to make the section 3626(b)(3) findings is *not* restricted to a record made years previously. Similarly, it is clearly arguable that even if the record made years ago when the prospective relief was ordered would have then supported the findings called for by section 3626(b)(2)—albeit there were no such findings then made one way or the other on the section 3626(b)(2)

25

factors—nevertheless termination should now be ordered if the facts as now shown to the district court do not show that *now* such "relief *remains* necessary to correct a *current* or *ongoing* violation"; if the four-year-old order—though warranted when made, *no* longer "*remains* necessary" or there is *now* no longer any "*current* or *ongoing* violation," then section 3626(b)(3) should not block termination of relief.

Like their arguments that they are entitled to have us now order the district court to immediately terminate relief, defendants' arguments about discovery are premised entirely on the theory that "based on the record" in section 3626(b)(3) refers to no more than the record already existing when the motion to vacate is filed.  That, however, is not clear and indisputable.  Moreover, defendants ask only for a stay of discovery pending our ruling on their appeal, which we have now dismissed.  We note that defendants have not sought to prevent any particular discovery, but only a blanket ban on any and all discovery.[14]

Defendants as petitioners for mandamus bear the burden of showing "that their right to issuance of the writ is 'clear and indisputable.'"  *Ozee v. American Council on Gift Annuities, Inc.*,

---

[14]And, we again note that defendants have not asked us to order the district court to stay the December 1992 judgment under section 3226(e)(2).  The validity of section 3626(e)(2) is irrelevant both to the discovery issue and to the issue of the proper construction of "based on the record" in section 3626(b)(3), as defendants have recognized (see note 11, *supra*, and accompanying text).

26

110 F.3d 1082, 1093 (5th Cir. 1997) (quoting *Mallard v. United States District Court*, 109 S.Ct. 1814, 1822 (1989)). This they have not done.[15] Moreover, issuance of mandamus is discretionary with this Court, and as a matter of discretion we decline to now issue the requested writ in the present circumstances. *See Kerr v. United States District Court*, 96 S.Ct. 2119, 2124 (1976); *Overton* at 958.

Our action herein must not be misunderstood.

We are well aware that section 3626(e)(1) provides that the district court "*shall promptly* rule on" any motion to modify or terminate prospective relief in a prison conditions case (emphasis added). And, we assume that the district court will comply with this unchallenged and important directive.[16] Indeed, defendants do

---

[15]While arguably the "clear and indisputable" right to relief standard might be relaxed in the context of an issue of law where the failure to do so would likely cause the mandamus petitioner severe harm (or there are other compelling circumstances), this is not such a case. Here, the defendants have never retracted their assertion that there is nothing they desire to do, or are considering doing, respecting the prison system that the December 1992 judgment would preclude; moreover, they have (until at least a month after this case was under submission following oral argument to the panel) kept their Rule 60(b) motion pending; also they have done little, if anything, to press for a ruling on either of their motions, apart from asserting to the district court (and this Court) that it should rule on their PLRA motion without considering anything not of record when the motion was filed.

[16]Plaintiffs' contentions that the PLRA is unconstitutional as applied to consent judgments entered before its effective date, or that by its terms it does not apply to such judgments, or that in such an instance it does not authorize termination prior to April 26, 1998, are all essentially questions of law which should present no obstacle to a prompt ruling on defendants' September 6, 1996,

27

not contend that the district has not done so (except insofar as they contend that *any* reference to or discovery respecting facts not memorialized in the record when their September 6, 1996 motion was filed is a failure to rule promptly). There would seem to be little reason for extended delay. The district court below is familiar with the case, of course. The lawyers are also presumably familiar with the case, not only from the 1992 hearing but also from the discovery prior thereto and from discovery since June 1996. There is—or was—a record (albeit not now before us) on the basis of which the district court issued its December 1992 memorandum and judgment. Relevantly updating that to the present with respect to the "eight substantive issues" as to which the December 1992 judgment issued "continuing permanent injunctive orders" should not be overly burdensome or time consuming. We note that so far as the record before us discloses, plaintiffs have not even alleged that there is any current or ongoing constitutional violation in the prison system. We emphasize, moreover, that ruling on defendants' September 6, 1996, motion should *not* entail a general overall examination of the prison system, but should simply be focused on those continuing injunctive orders (concerning the "eight substantive issues") contained in the December 1992 judgment. Ruling on the motion is not an occasion to examine other

---

motion, which is based entirely on the PLRA (and which is now the only motion to vacate pending before the district court).

28

areas of prison conditions or practices, neither the "nine substantive areas" as to which the December 1992 judgment "resulted in complete relief from judgment and termination of the court's jurisdiction" nor areas not dealt with one way or the other in the December 1992 judgment. Further, it must be remembered that the limitation on termination provided by section 3626(b)(3) is restricted to instances where the district court makes affirmative findings, adequately based on the record, as stated in section 3626(b)(3). Finally, as we recently noted in *Johnson v. Rodriguez*, 110 F.3d 299, 312 (5th Cir. 1997), "'systemwide injunctive relief may not be predicated on individual misconduct that "is not part of a pattern of persistent and deliberate official policy"'" (quoting *Ruiz v. Estelle*, 679 F.2d 1115, 1154 (5th Cir. 1982), *modified in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 103 S.Ct. 1438 (1983)). *See also Lewis v. Casey*, 116 S.Ct. 2174, 2183-84 (1996).

Our denial of the instant mandamus is without prejudice to whatever rights defendants may have to seek such relief should the district court fail to rule promptly on defendants' September 6, 1996, motion to vacate.

We now turn to the motion of Representative Culberson and Senator Brown to intervene in the proceedings before this Court. We deny the motion. Neither Culberson nor Brown is or was a party to this case, and intervention on appeal is inappropriate under the circumstances here, particularly as they have pending in the

29

district court a motion to intervene which the district court has not ruled on (and neither complains of that failure to rule nor seeks from us any order requiring the district court to rule). If the district court denies that motion, they may appeal the denial of their motion. We note in passing that it is at best doubtful that either Representative Culberson or Senator Brown is that sort of "state or local official or unit of government" to whom or which section 3626(a)(3)(F) grants a right to intervene. Because we have denied their motion to intervene in the proceedings before this Court, we likewise deny the motion of Representative Culberson and Senator Brown to file in this Court their motion to terminate federal jurisdiction over the Texas prison system. We likewise deny all other motions of Representative Culberson and Senator Brown that are pending in this Court and have not previously been ruled on by this Court or a judge hereof.

## Conclusion

We dismiss the appeal of defendants because the district court's September 23, 1996, order failing to immediately rule on their September 6, 1996, motion to vacate the December 1992 judgment is not a final, appealable order under section 1291, or the collateral order rule, and does not constitute an order appealable under section 1292(a)(1).

We deny defendants' petition for writ of mandamus.

We deny the motion of Texas Representative Culberson and Texas

30

Senator Brown to intervene, and likewise deny all other pending and previously unruled-on motions of said putative intervenors.

APPEAL DISMISSED; MANDAMUS DENIED;
MOTION TO INTERVENE and RELATED MOTIONS DENIED